UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEAN C., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case # 1:19-cv-1165-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
| Defendant. § | |

## INTRODUCTION

Plaintiff Dean C. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 19).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 16. Plaintiff also filed a reply brief. *See* ECF No. 18. For the reasons set forth below, the Commissioner's motion (ECF No. 16) is **DENIED**, and Plaintiff's motion (ECF No. 13) is **GRANTED IN PART**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on April 7, 2015, alleging disability beginning February 7, 2015 (the disability onset date), due to bipolar disorder,

degenerative disc disease, left shoulder pain, right hip pain, and left foot pain.[1] Transcript ("Tr.") 127, 139. The claims were denied initially on September 3, 2015 (Tr. 153), after which Plaintiff requested an administrative hearing (Tr. 161). Prior to the hearing, Plaintiff requested to amend his alleged onset date to February 9, 2016. Tr. 312. On October 30, 2017, Administrative Law Judge Michael Carr (the "ALJ") presided over a video hearing from Falls Church, Virginia. Tr. 28, 51-93. Plaintiff appeared and testified at the hearing from Buffalo, New York, and was represented by Daniel R. McComb, an attorney. *Id*. Deborah Bunn-Durham, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ granted Plaintiff's pre-hearing request to amend his alleged onset date to February 9, 2016. Tr. 28.

On July 5, 2018, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. 28-44. On July 3, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's July 5, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

---

[1] Plaintiff filed a prior application for benefits that was denied by the Appeals Council on August 14, 2009. Tr. 246.

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his July 5, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021;

2. The claimant has not engaged in substantial gainful activity since February 9, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: a lumbar spine impairment, a right shoulder impairment, a cervical spine impairment, a right hip and pelvis impairment, cannabis abuse, schizoaffective disorder, post-traumatic stress disorder and depression (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[2] except he can stand and/or walk for only four hours in an eight- hour workday.  The claimant can occasionally balance, crouch, crawl, kneel, stoop and climb ramps and stairs, but he can never climb ladders, ropes or scaffolds.  He can occasionally reach overhead. The claimant can perform simple, routine tasks and he

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

can work in an environment where change is minimal. He can tolerate occasional contact with supervisors and coworkers, but he can have no contact with the general public;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on June 5, 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 9, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 28-43.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on April 7, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 44. The ALJ also determined that based on the application for supplemental security benefits protectively filed on April 7, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ erred because he developed the RFC based on his own lay judgment after rejecting all of the medical opinions of record. *See* ECF No. 13-1 at 22-24. Next, Plaintiff argues that the ALJ erred because he failed to fulfill his affirmative duty to develop the record. *See id.* at 24-29. The Commissioner argues in response that the ALJ properly considered the evidence of record, including the medical opinion evidence, and the ALJ had no further duty to develop the record. *See* ECF No. 16-1 at 13-25.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds there is merit to Plaintiff's argument that the record lacked sufficient evidence to support the ALJ's physical RFC finding. As discussed further below, none of the treating or examining source medical opinions from the relevant time period include specific functional limitations. Accordingly, remand is warranted with respect to the ALJ's physical RFC finding, However, Court finds that the ALJ properly considered the evidence regarding Plaintiff's mental impairments, including the medical opinions of record and the other record evidence, and his determination that Plaintiff retained the RFC to perform simple, routine work that involved minimal change and limited contact with others was supported by substantial evidence. Tr. 39-40.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL

7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

With respect to Plaintiff's mental limitations, the ALJ gave some weight to the opinions of non-examining state agency medical consultant Sefali Bhutwala, Ph.D. ("Dr. Bhutwala"). Tr. 41-42, 131-38. Dr. Bhutwala reviewed the evidence of record as of September 2, 2015 and opined that Plaintiff retained the ability to perform simple work in a low contact environment. Tr. 132. Dr. Bhutwala further explained that, while Plaintiff's ability to deal with co-workers and the public would be somewhat reduced, he would be able to handle brief and superficial contact as well as ordinary supervision. *Id*. A review of the ALJ's decision shows that he not only gave weight to Dr. Bhutwala's opinion and incorporated the findings, but he also went further by prohibiting all contact with the general public. Tr. 33, 132. Although the ALJ is not bound by any findings made by state agency physicians, such doctors are highly qualified doctors who are also experts in Social

Security disability evaluations, and the ALJ is required to consider their findings. *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ also considered and gave some weight to the opinion of psychiatric consultative examiner Janine Ippolito, Psy.D. ("Dr. Ippolito"). Tr. 41-42, 644-48. Dr. Ippolito examined Plaintiff on July 21, 2015, and similar to Dr. Bhutwala, opined that Plaintiff was capable of understanding and following simple directions and instructions; performing simple tasks independently; maintaining attention and concentration; maintaining a regular schedule, learning new tasks, and performing complex tasks independently with no limitation. Tr. 41, 647. Dr. Ippolito further opined that Plaintiff could make appropriate decisions and relate adequately with others with moderate limitations. Tr. 41-42, 647. Finally, she opined that Plaintiff could "appropriately deal with [*sic*] moderate-to-marked limitations."[3] *Id.*

The evidence also showed that Plaintiff's mental limitations were longtime impairments, with records dating as far back as 2005. Tr. 38, 385-450, 530-72, 649-707. Plaintiff has been able to work for many years with these impairments and worked full time milking cows until 2015. Tr. 31, 36-38, 61-62, 65, 239-41, 267-68, 304, 507, 511, 515, 517. As stated above, an ALJ may properly consider that Plaintiff was able to work despite longstanding impairments. *See, e.g., DeRosia*, 2017 WL 4075622, at *22.

Additionally, the ALJ considered that Plaintiff has responded well to medication and counseling for these impairments. Tr. 38-39. It is proper for the ALJ to consider improvement with treatment. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (improvement with treatment is properly considered in concluding claimant not disabled); *Rivera v. Colvin*, No. 1:14-

---

[3] Although the quoted phrase is taken verbatim from Dr. Ippolito's report, there appears to be a missing word or other syntax error. The Court presumes the missing word to be "stress" and thus reads the phrase as Plaintiff could "appropriately deal with stress with moderate-to-marked limitations."

8

CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)) (ALJ may consider conservative treatment). For example, at the hearing, Plaintiff testified that he began taking Geodon in 2008 after experiencing some symptoms of psychosis. Tr. 38-39, 76. He testified that, after he began taking this medication, he had no more hallucinations. Tr. 78. Plaintiff also reported that his mental health was "much better" following his neck surgery in 2016. Tr. 77, 82. As the ALJ noted, during the relevant period, Plaintiff told his treatment providers he was "ok" overall, "feeling well" overall, or "doing well" overall. Tr. 38, 987, 996, 1000, 1081. He also said that talking to a therapist was helpful. Tr. 38, 987. In September 2016, Plaintiff stated that Geodon does a "great deal to prevent his hallucinations and stabilize his mood." Tr. 38, 996, 1000. In November 2016, Plaintiff again said his mood had been "pretty good," that Geodon continued to work well to stabilize his mood, and that Ativan was also "working well." Tr. 1010.

Finally, the ALJ considered that objective findings by treating sources were inconsistent with allegations of disability. Tr. 38-40. The ALJ noted that while providers observed some abnormalities, such as being anxious on at least one occasion (Tr. 38, 927), having rapid speech at times (Tr. 38, 932, 988), and a dysphoric or dysthymic mood at times (Tr. 38-39, 1082, 1010-11, 1018), examinations were generally unremarkable. For example, Plaintiff generally had a normal affect (Tr. 38-40, 738, 988, 997, 1004, 1011, 1018, 1025, 1040, 1054, 1070), and his mood was often described as "ok" (Tr. 38-40, 987, 1025, 1040, 1081) to euthymic (Tr. 38-40, 738, 988, 1004, 1054, 1070). He was consistently observed to be cooperative and pleasant (Tr. 38-40, 997, 988, 1004, 1011, 1018, 1025, 1040, 1053, 1069); he made direct eye contact (Tr. 38-40, 988, 997, 1004, 1011, 1018, 1025, 1040, 1054, 1070); and his motor activity was within normal limits (Tr. 38-40, 988, 997, 1004, 1011, 1018, 1025, 1040, 1053, 1070). On at least one occasion, Plaintiff exhibited

persecutory thought content, as he was "very fixated on health care professionals and insurance companies intentionally keeping spinal diagnoses from him" (Tr. 38, 989), and on another occasion, he was noted to be "somewhat" paranoid (Tr. 39, 937). Otherwise, however, he generally exhibited normal thought processes. Tr. 38-40, 738, 989, 997, 1004, 1011, 1018, 1025, 1040, 1054, 1070. He consistently denied hallucinations, and his perception was "normal" with no evidence of such. Tr. 38-40, 987, 989, 997, 999, 1002, 1004-05, 1011-12, 1016, 1018-19, 1025-26, 1040, 1054, 1070.

Examinations also showed Plaintiff's concentration and memory were both intact. Tr. 38-40, 989, 997, 1004, 1011, 1018, 1025, 1040, 1054, 1070, 1082. He generally exhibited fair insight and impulse control (Tr. 38-39, 989, 997, 1004, 1007-08, 1025, 1040, 1054, 1070), intact judgment (Tr. 38-40, 989, 997, 1004, 1011, 1018, 1025, 1040, 1054, 1070), and average intelligence (Tr. 38-40, 989, 997, 1004, 1011, 1018, 1025, 1040, 1054, 1070).

Based on the foregoing, the ALJ properly considered the medical opinions of record in conjunction with the other evidence concerning Plaintiff's mental impairments in determining that Plaintiff retained the RFC perform simple, routine work that involved minimal change, and limited contact with others. Tr. 39-40.

However, the Court finds that the ALJ failed to support his physical RFC determination with substantial evidence. As noted above, none of the treating or examining source medical opinions from the relevant time period include specific functional limitations pertaining to Plaintiff's physical capabilities. In light of the record's lack of useful medical opinions regarding Plaintiff's physical functioning, the ALJ failed in his affirmative duty to develop the record. The only medical opinion containing specific physical functional limitations was provided by consultative examiner Donna Miller, D.O. ("Dr. Miller") prior to Plaintiff's amended alleged onset

date (Tr. 636-39), but the ALJ discounted the opinion because it was outside of the relevant time period and Dr. Miller did not have the benefit of examining Plaintiff during the relevant period of alleged disability. Tr. 40, 42.

The ALJ also discounted the medical opinions of Plaintiff's treating physicians, neurologist Andrew Hilburger, M.D. ("Dr. Hilburger"), neurosurgeon Yan Michael Li, M.D. ("Dr. Li"), pain management specialist Armando Villarreal, M.D. ("Dr. Villarreal"), and pain management specialist Dr. Joseph Poli, M.D. ("Dr. Poli"), all of which provided percentage disability ratings to the Worker's Compensation Board relating to Plaintiff's degenerative disc disease and shoulder pain ranging from 50 to 100 percent. Tr. 40-42, 734-41, 744-52, 805-18, 854-89. *See* 20 C.F.R. § 404.1527(d) (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance"); *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008); *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). The ALJ also noted that these opinions lacked any functional assessment of Plaintiff's work-related abilities. Tr. 41.

As explained above, determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2). Furthermore, the Commissioner's regulations provide that a claimant is responsible for providing evidence upon which to base an RFC assessment. *See* 20 C.F.R. §§ 404.1512(a); 416.912(a) and 404.1545(a)(3); 416.945(a)(3). However, "the ALJ generally has an affirmative obligation to develop the administrative record [before making a disability determination]. This duty exists even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (internal citation omitted). *See also* 20 C.F.R. §§ 404.1545, 416.945 (An ALJ is responsible for "making

11

every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources.") (citing 20 C.F.R. §§ 404.1512(d) through (f), 416.912(d) through (f)). Where the record is inadequate, the ALJ will first contact the claimant's treating source to obtain the information; or if the information is not readily available from the treating source, the ALJ may ask the claimant to attend a consultative examination at the expense of the Social Security Administration. 20 C.F.R §§ 404.1512(d)(1) through (2) and, 416.912(d)(1) through (2); 404.1512(e), 416.912(e).

Notably, "where the medical findings in the record merely diagnose the claimant's . . . impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection [him or her]self." *Guttierez v. Berryhill*, 333 F. Supp.3d 267, 271 (W.D.N.Y. 2018) (internal quotation marks and citations omitted). Doing so results in an RFC determination that is not supported by substantial evidence. *Id*. In lieu of a medical opinion, an ALJ may support his or her RFC determination with contemporaneous treatment notes that provide evidence relevant to a claimant's ability to perform substantial gainful activity. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017); *see also Muhammad v. Colvin*, 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) ("While in some circumstances, an ALJ may make an RFC finding without treating source evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source.") (internal quotation and citation omitted).

With no medical source statement, consultative examination report, or other opinion evidence from the relevant period providing physical functional limitations, the Court is unclear how the ALJ assessed Plaintiff's physical capacity for work-related activities. *See Nelson v. Commissioner of Social Security*, 351 F. Supp.3d 361, 368-69 (remanding where the record

appeared to lack evidence of plaintiff's functional limitations relevant to the period of disability); *see also Judd v. Berryhill*, 2018 WL 6321391, at *7 (W.D.N.Y. Dec. 4, 2018) ("It is unclear to the Court how the ALJ, who is not a medical professional, determined the RFC without a medical source statement or consultative examination report to assist her in correlating the medical treatment notes into an assessment of Plaintiff's physical capacity for work-related activities. The decision demonstrates the ALJ's reliance upon her own lay opinion to determine Plaintiff's RFC, an error requiring remand").

In this case, the treatment notes from Plaintiff's medical providers repeatedly demonstrate significant physical limitations that are not reflected in the RFC assessed by the ALJ. Dr. Hilburger's examinations during the relevant time period demonstrate that Plaintiff exhibited a combination of some or all of the following: tenderness and limited range of motion of his cervical spine; tenderness and limited range of motion of his lumbar spine; tenderness and limited range of motion of his right shoulder; positive straight leg raising tests bilaterally; and an antalgic gait. See Tr. 515, 517, 519, 521, 575, 856, 862, 868, 874, 885, 891, 897, 899, 905, 911, 917, 944.

Likewise, diagnostic testing and treatment notes from other physicians also support greater functional limitations than the ALJ included in the RFC. A June 2015, MRI showed disc protrusion with impression on the anterior thecal sac at the L5-S1 level. Tr. 526. On June 17, 2015, and July 22, 2015, Jin Y. Chang, M.D. ("Dr. Chang"), of UMMC Pain Center, noted that Plaintiff exhibited a tenderness and decreased range of motion in his thoracic and lumbar spines, as well as a waddling gait and abnormal heel walk. Tr. 841, 847. On October 21, 2015, Dr. Chang again noted that Plaintiff exhibited a limited range of motion. Tr. 835-36. On November 15, 2016, Dr. Li noted that Plaintiff had positive straight leg raising tests bilaterally and that imaging revealed herniated discs with moderate foraminal stenosis and hypertrophic facet joints. Tr. 825. Dr. Li performed a

discectomy on Plaintiff in March 2015. Tr. 717-19. On April 28, 2016, Elaine Lemley, PA ("Ms. Lemley"), at United Memorial Medical Center ("UMMC"), noted that Plaintiff exhibited a limited range of motion in his neck. Tr. 927. A November 2016 MRI revealed multi-level disc disease and multi-level neural foraminal narrowing. Tr. 732. On February 8, 2017, Suleman Ahmed, M.D. ("Dr. Ahmed"), at UMMC, noted that Plaintiff exhibited a limited range of motion and reduced strength in his right shoulder. Tr. 932. On May 22, 2017, Dr. Chang noted that Plaintiff demonstrated a decreased range of motion in his thoracic and lumbar spine, and that he also exhibited a "waddling" gait. Tr. 829-30. On November 9, 2017, Dr. Li noted that an MRI demonstrated superimposed right posterior lateral disc protrusion. Tr. 965.

Based on the foregoing, it appears that the ALJ also did not rely on Plaintiff's treatment notes to assess Plaintiff's physical functioning. With no medical source statement or consultative examination report from the relevant period and no clear correlation to the treatment notes, the Court remains unclear as to how the ALJ assessed Plaintiff's physical capacity for work-related activities. *See Nelson*, 351 F. Supp.3d at 368-69; *Judd*, 2018 WL 6321391, at *7. The ALJ had several options to fulfill his duty to develop the record, such as recontacting Plaintiff's treating physician, or ordering updated consultative examinations, but he failed to do so. *See* 20 C.F.R §§ 404.1512(d)(1) through (2) and, 416.912(d)(1) through (2); 404.1512(e), 416.912(e). Thus, it is entirely unclear what the ALJ used to develop the physical RFC, other than his own lay interpretation of the record, which he is not permitted to do. *See, e.g.*, *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp.3d 252, 257 (W.D.N.Y. 2018) ("[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion.") (internal quotation marks and citations omitted)).

Because the ALJ failed to obtain competent medical opinion(s) that contained functional limitations on which he could base Plaintiff's physical RFC finding, the ALJ failed in his affirmative duty to adequately develop the record, and his physical RFC finding was not supported by substantial evidence. Accordingly, the Court finds that remand is warranted for the ALJ to obtain an independent functional capacity evaluation for a more accurate assessment of Plaintiff's work-related physical limitations. As noted above, the Court finds no other error in the ALJ's decision.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED IN PART**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE